An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| KEVIN HAMPTON A/K/A KEVIN LAMONTE HAMPTON, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 57809 |
| KEVIN HAMPTON, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 60170 |

FILED

FEB 06 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK



## ORDER OF AFFIRMANCE

These are consolidated appeals from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault with the use of a deadly weapon (No. 57809) and from a district court order denying a motion for a new trial based on newly discovered evidence (No. 60170). Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

First, Appellant Kevin Hampton argues that the district court erred by denying his motion for a new trial based upon newly discovered evidence. In support of his motion, Hampton presented to the district court evidence that: (1) the Las Vegas Metropolitan Police Department Forensics Lab (Metro Lab) mixed-up the DNA sample of another individual, Dewayne Jackson, leading to his wrongful conviction in an unrelated case; (2) the mix-up caused the Metro Lab to reanalyze more than 200 cases; (3) the police reviewed the quality assurance standards of the Metro Lab after the incident; (4) Hampton's DNA was processed around the same time period as Jackson's DNA; (5) the Metro Lab

subsequently added new policies and procedures to prevent future mix-ups; (6) the mix-up was discovered by an outside agency; (7) the mix-up was discovered prior to Hampton's trial; and (8) Jackson plead guilty to the crime despite his innocence. Having considered this evidence, we conclude that the district court did not abuse its discretion in denying Hampton's motion. Funches v. State, 113 Nev. 916, 923-924, 944 P.2d 775, 779-80 (1997) (reviewing a district court's order denying a motion for a new trial for an abuse of discretion). While the jury may have given the DNA evidence less weight had it heard that another error occurred in processing around the same relevant time period and that the Metro Lab subsequently added more protections to prevent future errors, we do not believe that the jury would have disregarded the DNA evidence altogether, especially when considered alongside the fingerprint evidence introduced at trial. Id. ("To establish a basis for a new trial on this ground, the evidence must be: newly discovered; material to the defense; such that even with the exercise of reasonable diligence it could not have been discovered and produced for trial; non-cumulative; such as to render a different result probable upon retrial; not only an attempt to contradict, impeach, or discredit a former witness, unless the witness is so important that a different result would be reasonably probable; and the best evidence the case admits." (citing Sanborn v. State, 107 Nev. 399, 406, 812 P.2d 1279, 1284 (1991)).

Second, Hampton argues that the State violated Brady v. Maryland, 373 U.S. 83, 87 (1963), by failing to disclose the investigation into the Jackson DNA mix-up prior to his trial. See Jimenez v. State, 112 Nev. 610, 619, 918 P.2d 687, 692 (1996) (requiring the State to disclose evidence in its possession that is favorable to the defense and material to

guilt or innocence). Even assuming that the State knew the extent of the mix-up prior to his trial, we conclude that Brady was not violated because the evidence is not material. Mazzan v. Warden, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000) (noting that where the defense did not make a discovery request or made a general discovery request, evidence is material if there is a reasonable probability that the result would have been different had it been disclosed). There is no evidence that the State's experts in Hampton's case directly participated in the unrelated mix-up and the State's experts were cross-examined regarding the inability to eliminate human error from processing; in fact, the DNA expert who processed the sample from the sexual assault kit was cross-examined regarding an error in transcription that occurred in a case that he personally participated in. Because there is not a reasonable probability that the disclosure of an investigation into an isolated error in an unrelated case would change the result on retrial, we conclude that Hampton is not entitled to relief on this claim.[1]

Third, Hampton argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the district court admitted an in-court identification that was irreparably tainted by a pretrial

---

[1]Hampton also argues that the district court erred in denying his post-conviction motion requiring the State to turn over the results of the investigation into the DNA mix-up in the Jackson case, claiming that he could use the information to supplement his motion for a new trial. Even assuming that the State had a duty to turn over this information, we do not believe that it would change the result on retrial for the reasons mentioned above.

identification. We agree. Five years after her sexual assault, detectives informed the victim in this case that the DNA specimen recovered from her sexual assault kit matched Hampton's DNA. The victim was also told that Hampton was currently on trial for murder and was asked if she would be willing to testify against him at a bad-acts hearing related to his murder trial. The victim agreed and was flown from Arizona to Indiana for the sole purpose of testifying at the hearing against Hampton. The victim was not shown a photo-lineup or a live lineup and was instead asked for the first time to identify her rapist while testifying at the hearing, where she identified Hampton as he sat at the defendant's table.

We conclude that this procedure was unnecessarily suggestive and irreparably tainted the subsequent in-court identification. Gehrke v. State, 96 Nev. 581, 584, 613 P.2d 1028, 1030 ("The test is whether, considering all the circumstances, 'the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that (appellant) was denied due process of law.'" (quoting Stovall v. Denno, 388 U.S. 293, 301-302 (1967) disapproved on other grounds by Griffith v. Kentucky, 479 U.S. 314, 326 (1987))). Here, although the victim's powers of observation and sole focus during the incident was undoubtedly on her attacker, she accurately described Hampton after the attack, and she was certain in her identification, we cannot ignore the blatant suggestiveness in this case and the time that elapsed between identifications. See Manson v. Brathwaite, 432 U.S. 98, 114 (1972) (balancing "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness's degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time between the

crime and the confrontation" against the "corrupting effect of the suggestive identification itself"). When the suggestiveness of the pretrial identification is balanced against the identification's reliability, we conclude that there is "a very substantial likelihood of irreparable misidentification" to the extent that the in-court identification was tainted and therefore inadmissible. Id. at 116 (internal quotations omitted).

Despite the error in admitting the in-court identification, we conclude that the verdict was not influenced by it. Summers v. State, 122 Nev. 1326, 1343, 148 P.3d 778, 789-790 (2006) ("[T]his court may deem a constitutional error harmless where it is clear beyond a reasonable doubt that the verdict rendered was 'surely unattributable to the error.'" (quoting Flores v. State, 121 Nev. 706, 721, 120 P.3d 1170, 1180 (2005))). The victim was cross-examined regarding the length of time between the rape and the identification and the suggestiveness of the pretrial identification, and the jury was specifically instructed to consider those factors in determining the weight to give the identification. Hampton's DNA matched the specimen recovered from the sexual assault kit and his fingerprints matched those recovered from inside the vehicle. Hampton also fit the general description given by the victim shortly after the rape. Accordingly, we conclude that the error in admitting the in-court identification was harmless beyond a reasonable doubt. Flores, 121 Nev. at 721, 120 P.3d at 1180.

Hampton also argues that the district court erred in denying his request for a mistrial after the victim made her in-court identification. Although a defendant may request a mistrial if prejudice occurs that prevents him from receiving a fair trial, Rudin v. State, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004), the district court has discretion to deny his

motion and we will not reverse "absent a clear showing of abuse." Rose v. State, 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007) (internal quotations omitted). Here, the district court allowed the defense to cross-examine the victim as to her recollection of the attack and the suggestiveness of the first proceeding and instructed the jury to consider both in determining the weight to give the identification. We conclude that the district court did not abuse its discretion in denying the defendant's motion for a mistrial. See Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (stating that a district court abuses its discretion when its decision is "arbitrary or capricious or if it exceeds the bounds of law or reason").

Having considered Hampton's contentions and concluded that they are without merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.    _____, J.
Saitta                                Hardesty

cc:    Hon. Valerie Adair, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk